[Civil No. 3912. Filed February 7, 1938.]

[75 Pac. (2d) 1031.]

WARREN A. GROSSETTA, R. H. MARTIN, and J. B. MEAD, Members of the Board of Supervisors of Pima County, Appellants, v. WILLIAM W. CHOATE, Appellee.

Mr. Joseph B. Judge, County Attorney of Pima County, and Mr. Tom Chambers, Deputy County Attorney, for Appellants.

Mr. Otto E. Myrland, for Appellee.

ROSS, J.—The board of supervisors of Pima county, consisting of the appellants, on February 12, 1937, being duly petitioned thereunto, established Twin Buttes-McGee Road No. 85–A as a county highway. The right of way passes over the W.½ of Sec. 34, Tp. 17 S., R. 12 E., which is a lieu or indemnity selection for school lands under section 24 of the Enabling Act, page XLII, Revised Code of 1928.

Appellee filed his petition for writ of *certiorari*, which was granted, and the board of supervisors' record of its proceedings was certified to the court. The assigned reasons in his petition for asking for the writ it is not necessary to state since petitioner has abandoned such reasons. The trial court in its decision held the board's action in establishing the county highway over the W.½ of section 34, *supra,* was void for the reason that the state held said land "in trust" and subject to certain restrictions in the Enabling Act and could not grant a right of way over it. Although appellee did not assign such ground in his petition for the writ, he has seized upon it here and bases his argument in support of his petition almost entirely thereon.

The proceedings by the board of supervisors to establish the highway were taken under section 1701, Revised Code of 1928, which prescribes the exclusive method for a county to obtain a right of way for a county highway. *Apache County* v. *Udall,* 38 Ariz. 488, 1 Pac. (2d) 340. The requirements of that section were complied with and the board of supervisors had jurisdiction of the parties and the subject-matter and was competent to make the order establishing the highway as surveyed and mapped, unless it appears that a right of way over lands of the state cannot be had. Section 3005, Id., reads:

"The department [state land department] may grant rights of way for any purpose it deems necessary, and sites for reservoirs, dams and power or irrigation plants or other purposes, on and over state lands, subject to such terms and conditions as the department may impose, and make rules and regulations respecting the granting and maintenance of such rights of way and sites. Where the granting of a right of way or site amounts to the disposition of, or conveys a perpetual right to, the use of the surface of said land, it shall be disposed of, after the department's approval of the application for said right of way or sites in conformity with the requirements of law, and the commissioner [state land commissioner] may, if in his judgment the best interests of the state so require, state in the notice of sale that said sale shall be subject to approval by the department, and in such case the purchaser thereof shall not be entitled to said right of way or site until his purchase is confirmed by the department."

Under this section the state land department may grant to the county a right of way easement over state lands, or may sell the lands for right of way. In this case the grant was of the right of way easement and not the fee.

On May 4, 1937, the state land department approved the board of supervisors' application for right of way

"with the understanding that the Right-of-Way is to be fenced on both sides, gates and cattle guards constructed at each end at the expense of Pima County."

The application referred to was not one to buy the land but one for an easement over it. The only question then is, Has the state land department power under the above section of the statute to grant a right of way over school lands of the state? The trial court was of the opinion that the lands acquired by the state from the United States through the Enabling Act were accepted by the state in trust for the people and could not be disposed of except upon the conditions

and terms of the grant, and that, since the Enabling Act contains no provision authorizing the state to grant rights of way easements over any of such lands, the above statute conferring the power upon the state land department is unconstitutional and void.

A considerable portion of the surface of the state consists of common school lands and other institutional lands, and if no right of way for public highways may be acquired over them, the result is most disturbing. Since statehood, two paved highways traverse the state east and west and one north and south and many others are tributary to these, and it would be remarkable if they did not pass over many sections of these institutional lands. Under the decision of the lower court, where these highways cross state lands, they are there without right and may be removed, and highways in the future must be located, however costly or difficult or inconvenient, on lands other than state lands. We think the restrictions in the grant of such lands, as to their disposition or use by the state, were intended to prevent their sacrifice and to obtain for the institutions to be benefited the best and highest price obtainable, and not to prevent or impair the construction of highways necessary for the convenience and comfort of the owners and patrons of such institutions. In *Ross* v. *Trustees of University of Wyoming,* 30 Wyo. 433, 222 Pac. 3, 5, the court said:

"The questions in the case concern the right of the Legislature to give to the board of land commissioners the power which it has assumed to exercise under this statute [statute similar to our section 3005, *supra*]. We think it proper first to consider the contention that the granting of the right of way is prohibited by several provisions of the acts of Congress granting the lands to the state and of the state Constitution. [Here the court sets out the provisions of the Enabling Act with reference to the grant of land to the state of Wyoming and the terms of the acceptance of such grant, which are very much like ours.] However, we

cannot for a moment believe that it was intended that the restriction on the use of the lands should interfere with the establishing of public roads across them.

"The power of a state to provide highways for public use has been likened to the power of taxation and said to be well-nigh as essential to the existence of government. Courts do not hold that the power has been surrendered except in those cases where there appears the deliberate purpose of the state to abandon it. *Cincinnati* v. *Louisville & N. R. Co.*, 223 U. S. 390, 405, 32 Sup. Ct. 267, 56 L. Ed. 481, quoting the following forceful language of Mr. Chief Justice TANEY in the *Charles River Bridge* [v. *Warren Bridge*] *Case*, 11 Pet. 420, 547 (9 L. Ed. 773):

" 'But the object and end of all government is to promote the happiness and prosperity of the community by which it is established; and it can never be assumed, that the government intended to diminish its power of accomplishing the end for which it was created. And in a country like ours, free, active, and enterprising, continually advancing in numbers and wealth, new channels of communication are daily found necessary, both for travel and trade, and are essential to the comfort, convenience, and prosperity of the people. A state ought never to be presumed to surrender this power, because, like the taxing power, the whole community have an interest in preserving it undiminished.' . . .

"It should require no discussion to show the vital importance of public roads to a new and undeveloped country such as Wyoming was at the time of these grants, and, in fact, is at the present time. Few highways are so short that they do not at some point cross public lands. They are as necessary across public lands held by the state under these grants as they are across similar lands still held by the United States, and their establishment is as likely to enhance the value of the former as the latter. To say that, when Congress granted to the state so considerable a part of the public lands for the support of certain state institutions, it was intended that the state should not thereafter grant rights of way for public travel without violating the conditions then agreed upon, would

be to adopt a construction that would seem not only contrary to the wise policy of Congress, but likely also to defeat in part the very objects of the grants. Those objects are not to be fully attained unless the · lands in question become desirable, and to be that, they, with adjacent lands, must be accessible.''

This case was before the court again on rehearing (31 Wyo. 464, 228 Pac. 642) and points raised or necessarily implied in the first opinion were considerably elaborated but with the same general conclusion. We think the determination of the Wyoming court and the reasons given in support thereof are in accord with common sense and not in conflict with the Enabling Act.

The trial court based its decision on the ruling in *State* v. *District Court*, 42 Mont. 105, 112 Pac. 706, a condemnation proceeding wherein one Steele and others sought to condemn certain school and other lands of the state for dam and reservoir sites, to be used in connection with an irrigation project. The court held that by reason of a prohibition in the Enabling Act against disposing of lands granted to the state for educational purposes other than at public sale, and for not less than $10 an acre, such lands could not be taken by virtue of the power of eminent domain. In that case the fee of the land was sought, while here only an easement is asked. Our section 3005, *supra*, provides for the case where the fee is granted by requiring the sale to be in conformity with the law as to appraisement, notice of sale, etc. It is probable that, if the supervisors were asking for the fee, this is the only way to obtain it, but they are not asking the land department for the fee. The expression of this court in *Boice* v. *Campbell*, 30 Ariz. 424, 248 Pac. 34, 35, to the effect ''that any limitation upon the disposition of public land provided in the Enabling Act is absolutely binding on the state of Arizona,''

quoted by the trial court as a basis for its ruling, was in connection with a discussion of the power of the legislature to authorize leases of the public lands for longer periods than five years by way of compulsory renewals. As applied to the situation there, what we said is right, but, since there is nothing in the Enabling Act limiting the power of the legislature to grant rights of way easements over the public lands for public highways, it can have no application here.

The appellants' motion to dismiss the petition and to quash the writ should have been granted. The judgment is reversed and the cause remanded with directions that this be done.

McALISTER, C. J., and LOCKWOOD, J., concur.