79 F.3d 1166
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
LAKE PLEASANT GROUP, an Arizona general partnership,
Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5061.
 United States Court of Appeals, Federal Circuit.
 March 5, 1996.
 
 Before RICH, CLEVENGER, and RADER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 
 1
 Lake Pleasant Group (LPG) appeals from the summary judgment of the United States Court of Federal Claims in favor of the United States, dismissing LPG's complaint, which sought compensation for an alleged taking of its property in violation of the Takings Clause of the Fifth Amendment. The Court of Federal Claims held that LPG failed, as a matter of law, to prove that it holds a compensable property interest sufficient to support a takings claim. Lake Pleasant Group v. United States, 32 Fed. Cl. 429 (1994). We reverse the judgment of the Court of Federal Claims and remand the case for further proceedings.
 
 
 2
 * LPG's takings claim is premised on the facts surrounding the purchase in 1965 by its predecessor-in-interest of 404 acres of land from the State of Arizona (the LPG Property). At the time of the sale, the LPG Property was part of the lands held by the State in trust pursuant to the New Mexico-Arizona Enabling Act, ch. 310, 36 Stat. 557 (1910) (Enabling Act). Among other things, the Enabling Act granted to the State, from the United States, title to lands that are, pursuant to the terms of the Enabling Act, held in trust for the use and benefit of specified public activities. The Enabling Act authorizes the State to sell interests in the trust land in accordance with specified procedures set forth in the Enabling Act.
 
 
 3
 The LPG Property does not now, and did not in 1965, abut any public roadway, and therefore is inaccessible except by crossing other lands. Those other lands, in 1965, were subject to State control. Some time after 1965, legal access to the LPG Property was afforded by the State by Right-of-Way No. 23127, granted by the State Land Department to LPG's predecessors. In August of 1983, Right-of-Way No. 23127 expired. LPG's predecessors initiated discussions with the relevant authorities to obtain another surface access to the LPG Property, and in April of 1986 they filed a formal application for a right-of-way with the State Land Department. LPG bought the LPG Property in 1986, and pursued the right-of-way application. Thereafter, the United States, through the Bureau of Reclamation of the Department of the Interior, acquired the land over which LPG sought to obtain a right-of-way.
 
 
 4
 LPG applied to the Bureau of Reclamation for a right-of-way to connect its land-locked parcel to the public road. LPG recognized that it has never held paper title to such a right-of-way. It based its request on Arizona common law, which provides for an implied easement by way of necessity: "where land is sold that has no outlet, the vendor by implication of the law grants ingress and egress over the parcel to which he retains ownership, enabling the purchaser to have access to his property." Bickel v. Hansen, 819 P.2d 957, 960 (Ariz. App. 1991). The Bureau of Reclamation denied LPG's application for a right-of-way honoring its claimed implied way of necessity. LPG then brought suit in the Court of Federal Claims, asserting that the action of the Bureau of Reclamation deprived it of its property without compensation.
 
 II
 
 5
 The Court of Federal Claims granted summary judgment for the United States, after concluding on three separate grounds that LPG's claim to an easement (based on the common law implied way of necessity) fails to assert a compensable property interest. We review the judgment of the Court of Federal Claims de novo, Cohen v. United States, 995 F.2d 205, 207 (Fed. Cir. 1993), and we shall discuss the three grounds in turn.
 
 
 6
 * As an initial matter, the Court of Federal Claims addressed the question of whether the Enabling Act by its terms precludes recognition of the common law easement asserted by LPG. The express language of Section 28 of the Enabling Act provides that "[n]o mortgage or other encumbrance of the said lands, or any thereof, shall be valid in favor of any person for any purpose ...." Noting that an easement is not akin to a mortgage, the Court of Federal Claims observed that an easement is nonetheless an encumbrance. Since the Enabling Act bars an encumbrance on trust lands, the Court of Federal Claims concluded that the terms of the Enabling Act preclude creation of a common law easement by necessity in connection with sale by the State of land-locked trust property.
 
 
 7
 This aspect of the summary judgment rests on the view that the Enabling Act bars transfer by the State of an easement -- as a separate property interest -- on trust lands. That view has been foreclosed. In Lassen v. Arizona, 385 U.S. 458 (1967), the Supreme Court faced the question whether all of the procedural requirements of the Enabling Act applied to the conveyance by the State of an easement or right-of-way over trust lands. If such interests are precluded as a matter of law by the ban on encumbrances in the Enabling Act, the Supreme Court would not have proceeded to decide that only some of the procedural requirements pertain to easements granted to the State for its use.
 
 
 8
 In addition, the Arizona Supreme Court has held that easements are not barred by the Enabling Act. In Grosetta v. Choate, 75 P.2d 1031 (Ariz. 1938), the court resolved the conflict between a state statute that permitted the state to grant counties in the state right-of-way easements over state lands, and the asserted lack of authority to convey easements on trust lands under the Enabling Act. The court held that "there is nothing in the Enabling Act limiting the power of the Legislature to grant rights of way easements over the public lands for public highways ...." Id. at 1033. In so holding, the court emphasized, by quoting and adopting language in a Wyoming Supreme Court opinion, that the fundamental purpose of the Enabling Act would be frustrated if easements for travel over trust lands were barred by the Enabling Act:
 
 
 9
 To say that, when Congress granted to the state so considerable a part of the public lands for the support of certain state institutions, it was intended that the state should not thereafter grant rights of way for public travel without violating the conditions then agreed upon, would be to adopt a construction that would seem not only contrary to the wise policy of Congress, but likely also to defeat in part the very objects of the grants. Those objects are not to be fully attained unless the lands in question become desirable, and to be that, they, with adjacent lands, must be accessible.
 
 
 10
 Id. at 1032-33.
 
 
 11
 The authority that permits easements over trust lands to be created consistent with the terms of the Enabling Act has arisen in circumstances where the State has sought to create an easement for State use. The deed to the LPG Property from the State to LPG's predecessor-in-interest, which is a matter of public record of which we may take judicial notice, specifies that the State reserved gas, oil, metals and mineral interests in the LPG Property. Such a reservation would be meaningless and valueless if the State is precluded from granting an easement to permit ingress and egress to the LPG Property. Were we to decline to apply the "state use" easement authority to this case, we would potentially frustrate the State's interest in deriving the maximum possible return from the disposition of the trust lands. Furthermore, the character of the easement to which LPG may be entitled under state common law is not determined on the record made on the summary judgment motion. Nothing in the record indicates that the easement necessarily would not be public in nature. We therefore hold that the foregoing authority that permits easements under the Enabling Act is applicable to this case.
 
 
 12
 Consequently, the Court of Federal Claims erred in concluding that the Enabling Act prohibits the grant by the State through its common law of an easement by way of necessity. The summary judgment against LPG on this ground must be reversed, and LPG be given the opportunity to prove at trial that it possessed a common law easement by necessity. On this point, we note finally that the United States has not defended this ground of the decision in its brief to this court.
 
 B
 
 13
 The procedural requirements of the Enabling Act are designed to ensure that the State receives full and fair value when it disposes of interests in the trust property. LPG contends that its predecessor-in-interest gave full and fair value for the implied easement as part of the consideration paid for the fee simple interest in the LPG Property. The United States did not challenge the adequacy of the payment for the fee simple interest, but argued that LPG failed to prove that full and fair value had been paid for the implied easement. The Court of Federal Claims agreed, citing a lack of information concerning the terms of the 1965 sale. In this regard, the Court of Federal Claims erred. LPG's assertion that the price paid for the fee interest also included a price for the easement cannot be dismissed out-of-hand. As an uncontroverted assertion, it is sufficient to withstand summary judgment against LPG. Furthermore, the deed for the 1965 transaction, of which we have taken notice, provides additional evidence to afford LPG a trial on the question of whether adequate compensation under the Enabling Act was given for the easement. In concluding above that LPG is entitled to a trial on the question of whether it possessed a common law easement by necessity, we determined that the reservation by the State of interests in the LPG Property is a material consideration, as it raises the issue of the State's interest in providing ingress and egress to the LPG Property. If LPG can prove that it possessed an implied easement, it should have the opportunity to prove that the parties intended that the price of the fee included the price of the implied easement. Only by exploration of the facts will it be known if full and fair value was given for the easement in the price paid for the fee. LPG is entitled to trial on that issue.
 
 C
 
 14
 The third ground for the summary judgment is that LPG failed to satisfy the requirements for entitlement to an implied easement by necessity. The Court of Federal Claims found that even if LPG could prove that it met all the technical requirements for such an easement, its claim to the easement would fail if the parties did not intend it. See Lake Pleasant Group, 32 Fed. Cl. at 439-40 (citing authority). The Court of Federal Claims then noted that in the normal circumstances, no payment is required for an implied easement by necessity, which arises by operation of law, and that a fundamental purpose of the Enabling Act is to produce funds for the State. The Court of Federal Claims reasoned that since it found no proof that the State had been compensated for the easement claimed by LPG, the State could not have intended to convey an easement by necessity, consistent with achieving the purpose of the Enabling Act. Id. at 441.
 
 
 15
 This ground for summary judgment must fail, for the same reason as the second ground. Each ground hinges on the factual question of whether adequate compensation under the Enabling Act was paid for the easement property interest claimed by LPG; neither ground can be decided on summary judgment.
 
 III
 
 16
 It remains to be learned at trial if LPG has a property interest in an implied easement by necessity that has been taken without compensation by the United States. Our holding is limited to rejection of the three grounds on which summary judgment was entered in favor of the United States. The judgment of the Court of Federal Claims is reversed and the case is remanded for further proceedings.
 
 
 17
 No costs.