**LAKE PLEASANT GROUP, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–848L.

United States Court of Federal Claims.

March 30, 1998.

James T. Braselton, Phoenix, AZ, for plaintiff.

Gregory D. Page, Washington, DC, with whom was Assistant Attorney General Lois G. Schiffer, for defendant.

## OPINION

MILLER, Judge.

This case is before the court on remand. *See Lake Pleasant Group v. United States,* 32 Fed.Cl. 429 (1994) (*"Lake Pleasant I "*), *rev'd and remanded,* No. 95–5061, 1996 WL 94962 (Fed.Cir. Mar. 5, 1996) (unpubl.) (*"Lake Pleasant II "*). This court granted defendant's initial motion for summary judgment and dismissed plaintiff's complaint, which sought compensation for an alleged taking of its property in violation of the Takings Clause of the Fifth Amendment. On appeal the Federal Circuit reversed and remanded the matter for further proceedings. Now, before the court after argument is defendant's second motion for summary judgment, which, while again questioning whether plaintiff holds a compensable property interest, challenges the alleged taking as unauthorized.

## FACTS

The following facts are undisputed.[1] In 1965 plaintiff's predecessors in interest purchased a landlocked parcel (the "LPG Property") from the State of Arizona. Prior to this sale, the LPG property was held in trust by the State of Arizona pursuant to the New Mexico–Arizona Enabling Act, Pub.L. No. 219, ch. 310, 36 Stat. 557 (1910) (the "Enabling Act" or "Act"). The Enabling Act granted to Arizona specified lands, often referred to as "state trust lands," to be held in trust for the use and benefit of specified public activities. Consistent with this pur-

---

1. *Lake Pleasant Group v. United States,* 32 Fed.Cl. 429, 430–34 (1994), recounts the facts of this case. Unless otherwise noted, this abridged factual account is taken from the earlier opinion.

pose, the Enabling Act also sets forth a detailed procedure for the disposal of state trust lands.

Sometime after the 1965 purchase, the Arizona State Land Department (the "SLD") granted plaintiff's predecessors legal access to the LPG Property through Right–of–Way No. 23127. Following the expiration of Right–of–Way 23127, in August 1983, plaintiff's predecessors initiated discussions with the SLD to obtain another access route, the "ROW corridor," to the LPG Property. In April 1986 plaintiff's predecessors filed a formal application with the SLD to acquire a permanent easement across the ROW corridor.

Plaintiff purchased the LPG Property on December 31, 1986—assuming the rights of its predecessors with regard to the pending application—and continued to seek approval from the SLD for a permanent easement over state trust lands. Plaintiff contends that employees of the SLD repeatedly stated that plaintiff would face no problems in obtaining the requested access route. While plaintiff's application was still pending, the United States Department of the Interior ("Interior") informed the appropriate Arizona state official that certain state trust lands retained by the state, including the ROW corridor, must be relinquished to the United States pursuant to section 28 of the Enabling Act, quoted *infra* at pp. 649–50, for the purpose of constructing the New Waddell Dam and Tucson Aqueduct, part of the Central Arizona Project.

In November 1987 the State of Arizona complied with the Secretary of the Interior's request to relinquish these state trust lands. However, the SLD did not notify plaintiff of the relinquishment until April 1991. Plaintiff's subsequent requests to the U.S. Bureau of Reclamation seeking access to the LPG Property across the ROW corridor were denied on the basis that the requests were incompatible with proposed government construction.

## PRIOR PROCEEDINGS

Although the Federal Circuit remanded this case for a trial, defendant renewed its motion for summary judgment, urging that the appellate court's decision does not pretermit defendant's new legal argument. To corroborate defendant's contention, the court must review the grounds defendant urged in the last summary judgment iteration, this court's rulings, and the Federal Circuit's mandate. In *Lake Pleasant I,* this court granted summary judgment for the United States after concluding on three grounds that plaintiff's claim to an implied easement by necessity across the ROW corridor was not a compensable property interest. Critical to the court's analysis was its interpretation of the express language of the Enabling Act. Section 28 states in pertinent part:

> No mortgage or other encumbrance of the said lands, or any thereof, shall be valid in favor of any person or for any purpose or under any circumstances whatsoever. Said lands shall not be sold or leased, in whole or in part, except to the highest and best bidder at public auction....
>
> . . . .
>
> All lands, leaseholds, timber, and other products of land, before being offered shall be appraised at their true value, and no sale or other disposal thereof shall be made for a consideration less than the value so ascertained, nor in any case less than the minimum price hereinafter fixed, nor upon credit unless accompanied by ample security, and the legal title shall not be deemed to have passed until the consideration shall have been paid.
>
> . . . .
>
> [The] State, at the request of the Secretary of the Interior, shall from time to time relinquish such of its lands to the United States as at any time are needed for irrigation works in connection with any such government project. And other land in lieu thereof are hereby granted to said state....
>
> . . . .
>
> Every sale, lease, conveyance, or contract of or concerning any of the lands hereby granted or confirmed, or the use thereof or the natural products thereof, not made in substantial conformity with the provisions of this Act shall be null and

void, any provision of the constitution or laws of the said State to the contrary notwithstanding.

New Mexico–Arizona Enabling Act § 28, 36 Stat. at 574–75.

The first of the three grounds was supported by two lines of reasoning. First, the court concluded that plaintiff's purported implied easement by necessity across the ROW corridor, a right arising by operation of state law, constituted an "encumbrance" within the contemplation of section 28. *See Lake Pleasant I*, 32 Fed.Cl. at 435. Although recognizing that plaintiff's purported interest was not akin to a mortgage, the court concluded that the Act's conveyancing restrictions intended to reach all modes and manner of ownership and alienation of state trust lands, including encumbrances arising by operation of state law. *See id.* Second, the court interpreted section 28, in conjunction with sections of the Act referenced therein, to conclude that the Enabling Act, and in particular the Act's restrictions concerning the disposition of state trust lands, superseded common-law property rights such as plaintiff's easement by necessity. *See id.* at 435–36. The court considered that, if the Enabling Act were interpreted not to reach interests that pass by operation of state law, the scheme put in place by the Act would be defeated.

On appeal the Federal Circuit ruled that easements over state trust lands are not incompatible with the fundamental purposes of the Enabling Act set forth in *Lassen v. Arizona*, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967), and *Grossetta v. Choate*, 51 Ariz. 248, 75 P.2d 1031 (1938). In *Lassen* the Supreme Court held that, consistent with the purposes of the Enabling Act, the state could acquire an easement for highway construction across state trust lands enjoying certain exemptions from the Act's conveyancing restrictions, but always must compensate the trust in money for the full appraised value of such easements. 385 U.S. at 464–65, 469, 87 S.Ct. at 587–88, 590. The Federal Circuit reasoned that the Court would not have proceeded to decide that only some of the conveyancing restrictions were applicable to Arizona if all encumbrances were banned across state trust land as a matter of law. *See Lake Pleasant II*, No. 95–5061, slip op. at 4.

Adopting the language of the opinion in *Grossetta*, the Federal Circuit held that "'there is nothing in the Enabling Act limiting the power of the legislature to grant rights of way easements over the public lands for public highways....'" *See id.* at 5 (quoting *Grossetta*, 75 P.2d at 1033). In so holding, the Federal Circuit explained that if the Enabling Act barred easements for travel across state trust lands, private parties would not be able to exploit fully the economic value of such land in contravention of the Act's express purpose. *See id.*

The Federal Circuit also relied on the language of the deed or "Certificate of Purchase" controlling the 1965 sale of the LPG Property from the SLD to plaintiff's predecessors to reinforce the propriety of permitting easements by necessity across state trust lands. The deed provides that the State of Arizona reserves gas, oil, metal, and mineral interests in the LPG Property. Because such a right would be "meaningless and valueless" if the state were precluded from granting easements for ingress and egress across state property, the Federal Circuit considered that easements do not frustrate, but, rather, promote the maximum possible return from the disposition of state trust lands. *Id.* The court concluded that the Enabling Act does not prohibit the grant by the state through its common law of an easement by way of necessity and, specifically, that plaintiff has the right to prove at trial that it possessed a common-law easement by necessity.[2]

The second ground of the trial court's decision in *Lake Pleasant I* rested on considerations regarding whether plaintiff's purport-

---

**2.** The Federal Circuit noted that defendant declined to defend this ground of the decision in its briefs. Constituting only two sentences of defendant's motion for summary judgment in *Lake Pleasant I* was the argument that the Enabling Act does not authorize a taking of plaintiff's purported property interest; as a result, the trial court's opinion did not address it. Defendant has now expanded the argument and relies on it almost exclusively for the purposes of its present motion.

ed property interest contravened the express purposes and requirements of the Enabling Act. The manifest purpose of the Act, set forth in *Lassen*, 385 U.S. at 463, 87 S.Ct. at 587, is "to produce a fund, accumulated by sale and use of the trust lands, with which the State could support the public institutions designated by the Act." The various conveyancing restrictions within the Act, consonant with this purpose, establish "that the Act's designated beneficiaries 'derive the full benefit' of the grant." *Id.* at 468, 87 S.Ct. at 589 (internal citation omitted). One such restriction demands that "[a]ll lands, leaseholds, timber, and other products of land ... be appraised ... and [that] no sale or other disposal ... be made for a consideration of less than the [appraised] value.... " New Mexico–Arizona Enabling Act § 28, 36 Stat. at 574. In practical terms these restrictions serve to guarantee that Arizona shall receive full and fair value for the transfer of any state trust lands.

Plaintiff conceded before the trial court that it did not render compensation to Arizona's trust fund for the ROW corridor; therefore, the critical issue devolved to whether plaintiff's predecessors adequately compensated the trust fund for the purported property right in the implied easement by necessity. *See Lake Pleasant I*, 32 Fed.Cl. at 437 n. 8. Despite the importance of producing evidence indicating that plaintiff or plaintiff's predecessors complied with the Act's conveyancing restrictions, the only proof of compensation was the unsupported assertions of plaintiff's counsel. Because plaintiff adduced no "evidence as to the 1965 sale, such as a copy of the deed, the price paid for the parcel, or the price of other parcels sold by the SLD during that time period," *id.* at 438, the court determined that plaintiff did not sustain its burden of proof in establishing that compensation was rendered by plaintiff's predecessors for the ROW corridor in connection with the 1965 sale.

On appeal defendant did not challenge the adequacy of payment for the fee simple interest in the LPG property, but contended that plaintiff had not paid full and fair value for the purported implied easement. Although the Federal Circuit acknowledged the lack of

evidence before the court in *Lake Pleasant I* regarding the terms of the 1965 sale, the appeals court concluded that "[plaintiff's] assertion that the price paid for the fee interest also included a price for the easement cannot be dismissed out of hand. As an uncontroverted assertion, it is sufficient to withstand summary judgment against [plaintiff]." *Lake Pleasant II*, No. 95–5061, slip op. at 7. The court explained that the deed constituted sufficient evidence to afford plaintiff a trial on the question of whether adequate compensation under the Enabling Act was paid for the easement.

The third ground for granting summary judgment turned on plaintiff's failure to demonstrate that it had satisfied the requirements for an easement by necessity. Common-law easements by necessity are derived from the long standing rule of "public policy that lands should not be rendered unfit for occupancy ... or cultivation...." *Pritchard v. Scott*, 254 N.C. 277, 118 S.E.2d 890, 894 (1961). Establishing an easement by necessity requires the party claiming the property right to demonstrate several elements. In addition to this burden upon the moving party, the court must determine that both parties, in fact, intended the implication of such an easement. *See Montana Wilderness Ass'n v. United States Forest Serv.*, 496 F.Supp. 880, 885 (D.Mont.1980), *aff'd and remanded on other grounds*, 655 F.2d 951 (9th Cir.1981). Relying on the purpose of the Enabling Act established in *Lassen*, the trial court concluded that the SLD and plaintiff's predecessors could not have intended an implied easement by necessity because plaintiff proffered no evidence to suggest that the state trust fund had been adequately compensated.

The Federal Circuit reversed on this ground for the same reason as the second; both hinged on the factual question of whether adequate compensation under the Enabling Act was paid for the purported easement. The court stated that "[i]t remains to be learned at trial if [plaintiff] has a property interest in an implied easement by necessity that has been taken without compensation by the United States. Our holding is limited to the three grounds on which summary judg-

ment was entered...." *Lake Pleasant II,* No. 95–5061, slip op. at 8.

The "Certificate of Purchase" or deed was implicated as a fundamental component of the Federal Circuit's reasoning for reversing each of the three grounds on which this court in *Lake Pleasant I* granted summary judgment. The deed was pivotal to the appeals court's determination of whether the trust was compensated in the course of the 1965 sale of the LPG property from the SLD to plaintiff's predecessors. Notwithstanding plaintiff's concession that the deed was produced for the first time on appeal, the Federal Circuit took judicial notice of the deed, asserting it to be a matter of public record.[3]

Subsequent to the Federal Circuit's remand, plaintiff requested that the parties suspend this action in federal court while plaintiff pursued a remedy in Arizona state court. Plaintiff's state court claim posited alternate theories of equitable estoppel and implied easement by necessity—the latter theory being the same raised in *Lake Pleasant I* and on appeal before the Federal Circuit.

The Superior Court of Arizona held that plaintiff failed to demonstrate the necessary elements of equitable estoppel "because [plaintiff] was not ignorant of the true facts" regarding the eventual reclamation of plaintiff's property interest by the United States. *Lake Pleasant Group v. Arizona State Land Dep't,* No. CV 93–22315 (Ariz.Super.Ct., Aug. 30, 1995). In particular, the court cited an excerpt from the TICOR Preliminary Title Report, dated December 24, 1986, stating that it does not insure against "[t]he effect of

United States Department of the Interior Bureau of Reclamation, Central Arizona Project Contract No. 5–07–32–L0926 recorded June 3, 1986 at Recorders No. 86 277075." *Id.* at 5. Because plaintiff failed to investigate title exceptions, and instead relied on the verbal promises of SLD employees, the court held that plaintiff's recovery could not succeed under an equitable estoppel theory. *See id.* at 6.

The Arizona court recited the holdings of the Court of Federal Claims in *Lake Pleasant I* that previously had determined 1) that plaintiff's common-law property interest was superseded by the Arizona Constitution and the language of the Enabling Act, and 2) that, even if the Arizona Constitution and Enabling Act did not preclude an easement by necessity, plaintiff would still not have a compensable property interest because plaintiff failed to demonstrate that the parties intended to create such an easement. The court held that collateral estoppel precluded plaintiff from relitigating the same issues in state court that were already decided in federal court. *See id.* at 6–7.

Finally, the Arizona court noted that the SLD's duty to record plaintiff's right of way and quitclaim deed arose solely from Arizona state statute and that liability created by statute is barred by a one-year statute of limitations. Because plaintiff's claim accrued no later than April 24, 1991, the date on which the Arizona court established that plaintiff learned of the road relocations and changes in ownership of the state trust lands, the court held that plaintiff's claim was time-barred. The Federal Circuit's subsequent

---

**3.** Plaintiff has yet to provide an adequate explanation as to why the deed was not produced to the trial court. After argument on defendant's present motion for summary judgment, the court requested supplemental briefing from the parties addressing, *inter alia,* information regarding the initial production of the deed. Plaintiff confirmed that the deed "was presented to the Federal Circuit as an addendum to [plaintiff's] opening brief." Plf's Br. filed Feb. 11, 1998, at 2. According to plaintiff, the deed was not produced prior to appeal because plaintiff first learned of the deed's existence in August 1994, after plaintiff had filed its opposition brief to defendant's initial motion for summary judgment. It should be noted that almost four months passed between the period during which plaintiff says that it

learned of the deed's existence and this court's decision in *Lake Pleasant I* granting summary judgment in favor of defendant.

Although this discussion regarding the deed lacks direct bearing on whether defendant is now precluded from propounding certain arguments, the subject is particularly relevant with respect to the recovery of litigation expenses should the matter proceed to trial. In a takings case, litigation expenses, which include attorney fees and appraisal fees, are recoverable under the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4654(c) (1994). Litigation thus far has moved at a glacial pace; this fact will not be overlooked should the court be called upon to determine what constitutes "reasonable" expenses.

decision holding that common-law easements by necessity were not superseded by the Arizona Constitution or the Enabling Act did not prompt plaintiff to file a motion for reconsideration in state court.[4]

## DISCUSSION

Defendant's second motion for summary judgment depicts a significant departure from the three arguments that it pressed in *Lake Pleasant I*. It seems a reasonable inference that this departure is based in large part on plaintiff's persuasive new evidence supporting the contention that full and fair value for the ROW corridor was paid in the course of the 1965 sale transaction between the State of Arizona and plaintiff's predecessors. In light of this new evidence, which was not made available to the trial court in *Lake Pleasant I*, defendant's principal argument now turns on whether the alleged taking by the United States was "authorized," assuming, *arguendo*, that plaintiff has a lawful property interest in the ROW corridor. Defendant intones that this is an issue "diametrically different from that of whether plaintiff has or does not have a private property interest." Def's Br. filed Dec. 11, 1997, at 4.

Receiving considerably less attention in its brief than the argument based on authorization, defendant also contends that an alleged taking is not compensable if the taking was the consequence of employee mistakes or misconduct. In support of this argument, defendant emphasizes the documented mistakes and misconduct of the Arizona SLD employees on which plaintiff and plaintiff's predecessors detrimentally relied. Finally, defendant argues that, when state and federal sovereigns engage in activity jointly implicated in an alleged taking, the sovereign

primarily or exclusively responsible will bear that liability. Defendant maintains that the "entirely discretionary," Def.'s Br. filed Oct. 11, 1997, at 24, conduct of the SLD and plaintiff's predecessors controls this issue. Specifically, defendant cites the discretionary decision of the SLD to create, and then convey to plaintiff's predecessors, a landlocked parcel and the SLD's decision to decline granting plaintiff or plaintiff's predecessors access across the ROW corridor despite repeated requests.

As a threshold matter, a lower court must strictly comply with the mandate of its appellate court. "Interpretation of an appellate mandate entails more than examining the language of the court's judgment in a vacuum," requiring the lower court to draw upon both the language of the judgment in combination with the appellate opinion to discern properly the nature of its remaining tasks. *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed.Cir. 1998). Although relief may not be granted beyond the scope of the mandate, the lower court may act on "matters left open by the mandate." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). The considerable deference that must be afforded to an appellate mandate stands in close relation to the "law of the case" doctrine, which obligates a lower court on remand to follow the decision of the reviewing court, provided such decision does not conflict with subsequently controlling authority. *See Gould, Inc. v. United States*, 67 F.3d 925, 928 (Fed.Cir.1995). The purposes of the doctrine are "to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts." *Jamesbury Corp v. Litton Indus. Prod., Inc.*, 839 F.2d 1544,

---

4. The Joint Status Report filed May 24, 1996, states that "the parties agree that judicial economy and efficiency would be better served if this Court suspended its proceedings for the moment, pending a final decision by the Arizona state courts...." On May 30, 1996, the court entered an order suspending plaintiff's case to allow plaintiff to file a motion for reconsideration in Arizona state court. Status reports filed by plaintiff over the following 14 months indicate that pursuing a remedy in state court remained plaintiff's preferred course of action. However,

plaintiff failed to file the motion for reconsideration. On August 13, 1997, this court determined that plaintiff was not proceeding in a manner that would advance its case and allowed, at defendant's request, a second round of summary judgment briefing. Plaintiff's counsel explained during argument that "my client decided whatever resources it had, it was better using them in this Court as opposed to trying to go back to [state court]." Transcript of Proceedings, *Lake Pleasant Group v. United States*, No. 92–848L, at 85 (Fed.Cl. Feb. 4, 1998).

1550 (Fed.Cir.1988). The law of the case does not constrain the trial court with respect to issues not actually considered by an appellate court and does not require the lower court to adhere to its own previous ruling if it has not been adopted, explicitly or implicitly, by the appellate court's judgment. *See Exxon Corp. v. United States,* 931 F.2d 874, 877 (Fed.Cir.1991) (citing *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148, 59 L.Ed.2d 358 (1979), and *Holcomb v. United States,* 622 F.2d, 937, 940 (7th Cir. 1980)).

Whether defendant is now foreclosed from raising the authorization argument after declining to defend this argument on appeal therefore turns on determining precisely the issues that are left open by *Lake Pleasant II.* The Federal Circuit's opinion establishes that the Enabling Act does not bar the creation and transfer of a common-law easement across state lands as separate property interests.[5] Defendant's argument that the alleged taking of plaintiff's purported property interest across the ROW corridor is not authorized under the terms of the Enabling Act lies beyond the scope of this mandate, though not far beyond. Therefore, this court may address this argument, as well as defendant's other arguments implicating the effect of the erroneous and discretionary conduct of Arizona SLD employees.

■ 1. The crux of defendant's authorization argument turns on the proposition that the State of Arizona may not relinquish to the United States state trust lands previously conveyed into private ownership. Defendant contends that if relinquishment under these circumstances were permitted, the fundamental purpose of the Enabling Act set forth in *Lassen* would be frustrated. Because the intent of the relevant statute—in this case, the Enabling Act—involved in an alleged taking governs the scope of its authorization, defendant asserts that a taking of plaintiff's property interest in the ROW corridor could not be authorized.

On two separate occasions the Supreme Court has expounded upon the language and purpose of the Enabling Act. In *Lassen* the Court explained that

[t]he grant was plainly expected to produce a fund, accumulated by sale and use of the trust lands, with which the State could support the public institutions designated by the Act. It was not supposed that Arizona would retain all the lands given it for actual use by the beneficiaries.... [Congress] intended instead that Arizona would use the general powers of sale and lease given it by the Act to accumulate funds with which it could support its schools.

385 U.S. at 463, 87 S.Ct. at 587. *Lassen* addressed the issue of whether the State of Arizona, in condemning state trust lands for the purpose of constructing public roadways, must comply with the formal conveyancing requirements mandated by the Enabling Act. The Court held that public condemnation by the state without the benefit of a public auction would not frustrate the purpose of the Act, provided that Arizona compensated in full the trust fund for the acquired lands.

In *Alamo Land & Cattle Co. v. Arizona,* 424 U.S. 295, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976), the Court revisited the language and

---

**5.** As discussed *supra* at p. 650, the Federal Circuit relied exclusively on *Lassen* and *Grossetta* to hold that the Enabling Act does not prohibit the transfer of an easement on state trust lands. *Lassen*'s limited holding states that consistent with the purposes of the Act, the State of Arizona need not comply with the Act's conveyancing restrictions when disposing of and acquiring state trust land for a state highway program, and that Arizona must compensate the trust in money. *See Lassen,* 385 U.S. at 465, 469–70, 87 S.Ct. at 588, 590–91. *Grossetta* holds that "there is nothing in the Enabling Act limiting the power of the Legislature to grant rights of way easements over the public lands for public highways...." *Grossetta,* 75 P.2d at 1033. To conclude that the

Enabling Act does not bar the transfer of easements on state trust lands because Arizona need not comply with the Act's conveyancing restrictions when acquiring land for public use rests on inferences that were not discussed. The Federal Circuit noted only that 1) Arizona's reservation in gas, oil, metal, and mineral interests granted by a "Certificate of Purchase," such as that held by plaintiff, would be valueless and meaningless if easements by way of necessity were not permitted by the Act, and 2) that *Lassen* and *Grossetta* pertain to "state use" easement authority, and that nothing in the record of the instant case suggests that plaintiff's easement would not be public in nature.

purpose of the Enabling Act in a case involving the condemnation of state trust lands. Petitioner in *Alamo* had been granted a leasehold interest by Arizona on trust land that subsequently became subject to a complaint in condemnation filed by the United States. The Court held that "nothing in the Enabling Act, apart, possibly from the extent it may incorporate Arizona law by reference, prevents the usual application of Fifth Amendment protection...." *See id.* at 311, 96 S.Ct. at 919.

The Court's explication of Act's purpose in *Lassen* and its discussion of leasehold interests on state trust land within the context of the Act's conveyancing restrictions in *Alamo* constitute sufficient authority for plaintiff to withstand summary judgment. In order to produce and support a fund for Arizona's public institutions designated by the Act, the Court in *Alamo* set forth a relatively simple rule: "Full appraised value is to be determined and measured at the times of disposition of the respective interests, and if the State receives those values at those respective times, the demands of the Enabling Act are met." 424 U.S. at 307, 96 S.Ct. at 918. Defendant's argument does not address adequately how relinquishment of state trust land subject to plaintiff's easement by way of necessity contravenes the explicit mandate and purpose of this rule. Assuming that plaintiff rendered full compensation for the ROW corridor at the time the easement was granted, the demands of the Enabling Act are met. Similarly, if the State of Arizona relinquishes state trust land and receives land in exchange of equivalent value, the demands of the Enabling Act are met.[6] To measure the value of the relinquished land despite the presence of plaintiff's purported easement by way of necessity "overlooks the actuality of a two-step disposition of interests in the land," the first at the time plaintiff's

predecessors' right in the easement arose, and the second at the time of the relinquishment. *Id.* at 306–07, 96 S.Ct. at 917–18.

The most significant difference between the condemnation power and the relinquishment power is that relinquishment demands the exchange of land between sovereigns, whereas condemnation involves the exchange of land for money. In addition, the Secretary's power of condemnation derives from a statute different from that from which the relinquishment power derives. Defendant contends that if the United States had exercised its relinquishment power, rather than its condemnation power in *Alamo,* the Court would have reached the opposite result because only condemnation permits the taking of private property. Defendant directs the court's attention to the following language in *Alamo:* "[If] the State 'relinquished' the property to the United States, the lease 'shall be null and void as it may pertain to the land so relinquished.'" *Id.* at 308, 96 S.Ct. at 918 (internal citations omitted).

*Alamo* establishes that the creation of leasehold interests on state trust lands is authorized under the terms of the Act, and that such interests are compensable upon the ultimate disposition or transfer of the land into private hands. *See id.* at 306, 96 S.Ct. at 917. The Secretary's demand on the SLD for relinquishment of state trust land subject to plaintiff's interest falls squarely within the Enabling Act's requirements interpreted in conjunction with this holding. Contrary to defendant's vigorous assertions, Arizona did not relinquish to the United States land previously conveyed into private ownership. Rather, Arizona relinquished trust land to which the state held fee title, yet subject to plaintiff's usufructuary ingress and egress easement.

---

6. Following defendant's logic, one arrives at the conclusion that value for the ROW corridor was paid to the trust fund twice, far surpassing the express and implied compensation requirements disseminating from the purpose of the Act: first, upon the initial disposition of the LPG property to plaintiff's predecessors, and second, when the United States exchanged land with Arizona that included the value to the ROW corridor. Defendant recognizes this, and not surprisingly asserts

that because Arizona would receive land exceeding the quantum of land originally donated by Congress, the "equivalency" requirement of the Act's relinquishment scheme is violated. The Act states only that land shall be exchanged by the United States "in lieu of" land relinquished by the State of Arizona, and does not include language consonant with a strict equivalency requirement, *as contended by defendant.*

Concluding that the United States lacks the authority under the Enabling Act to demand from the SLD the relinquishment of land previously conveyed into private ownership is no more compelling than the sensible understanding that the SLD lacks the authority to relinquish land that it does not hold in fee. If plaintiff held fee title to the ROW corridor, defendant's argument would prove far more persuasive. However, because fee title to the subject state trust land was transferred from the State of Arizona to the United States, each sovereign remained within the bounds of its authority under the terms of the Act. Nothing in the record suggests that the relinquishment restricts the ability of the United States subsequently to exercise its direct condemnation power with respect to the ROW corridor.[7] The language from *Alamo* relied on by defendant voiding the leaseholder's interest upon a demand for relinquishment was a provision in the lease specific to those proceedings. As there is no lease, deed, certificate of purchase, document of title, or similar instrument governing plaintiff's rights in its implied easement by way of necessity across the ROW corridor, no restriction is operating in the instant case.[8]

In sum, imposing on defendant the burden of compensation for a taking of plaintiff's interest in the ROW corridor 1) would not contravene the purpose of the Enabling Act as set forth in *Lassen;* 2) would not violate the Act's transfer restrictions considering that fee title was relinquished not by plaintiff, but instead by the State of Arizona sub-ject to plaintiff's usufructuary interest; and 3) would not stand in violation of a "relinquishment clause" or similar restriction threatening to void plaintiff's interest—as was present in controlling lease in *Alamo*—because no such restriction appears in the Act or in any instrument governing plaintiff's easement by necessity.

■ 2. Defendant next argues that the alleged taking of plaintiff's property would not have occurred but for the mistakes and the misconduct of SLD employees. In *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 799 F.2d 317, 327 (7th Cir.1986), Judge Easterbrook instructs that

> when the takings clause was added to the Constitution ... there was a consensus that the sovereign could not be sued for errors save with its consent. We do not think that the Takings Clause, unbeknownst to all, established a principle of governmental liability for mistakes in the implementation of federal programs.

Defendant asserts that "employee misconduct, mistakes, or related torts can never be the natural or inevitable consequence of authorized agency action because, by definition, they would not have occurred if the relevant federal or non-federal actors had not violated rules, procedures, or other discrete standards of care for either employee or governmental conduct." Def's Br. filed Oct. 31, 1997, at 20.

The egregious errors attributable to the employees of the SLD are undisputed. The impact of these errors, however, remains

7. As did the SLD before it, the United States rejected plaintiff's application for access across the ROW corridor in a letter dated February 18, 1994, from Interior to plaintiff's counsel. This letter indicates that the United States acquired land for the Central Arizona Project through both deed of relinquishment and by condemnation. The court can conceive of no reason why defendant would now be precluded from exercising its condemnation power over the ROW corridor considering that the demand for relinquishment was not unauthorized.

8. The Court in *Alamo* explained that the Enabling Act does not include a provision nullifying or voiding interests on state trust lands, such as leaseholds, when the state sells the property or it is condemned. *See* 424 U.S. at 307, 96 S.Ct. at 917–18. Responding to Arizona's argument that would in effect "downgrade" a ten-year lease to a lease terminable at will upon sale or condemnation of the property, the Court stated that

> [t]he lessee is entitled to better treatment that this if neither the Enabling Act nor the lease contains any such provision.... [Although] it is within Arizona condemnation power to insert a condemnation clause in a lease it makes of trust land[, this] does not mean that the State may claim the same result when the lease contains no such clause.

*Id.* The tenor of this language undercuts considerably defendant's argument, particularly in light of the Federal Circuit's determination that plaintiff's easement by way of necessity does not constitute an encumbrance within the terms of the Act. The Court in *Alamo* determined the same with respect to plaintiff's leasehold interest.

contested between the parties. The record reflects that the SLD failed to warn the Federal Government of plaintiff's interest when the Secretary made the relinquishment request. Attempting to divine the manner in which the Federal Government would have proceeded had it known of plaintiff's interest is not a matter that the court must resolve. Defendant could have condemned plaintiff's property, used its relinquishment powers to obtain a different tract of land from Arizona, or carved out a reservation in its use of the relinquishment power. During argument defendant's display of uncertainty as to the course it would have chosen had the SLD acted appropriately was evident. Assertions supported neither by dispositive fact nor conclusion of law, particularly when such facts or conclusions are in dispute, cannot properly be decided on summary judgment. *See Levi Strauss & Co. v. Genesco,* 742 F.2d 1401, 1404 (Fed.Cir.1984); *International Business Machines Corp. v. United States,* 38 Fed.Cl. 661, 665 (1997).

■ 3. Defendant's final argument calls upon the court to assess the actions of each sovereign and determine which should bear the burden of compensation for the alleged taking. Defendant contends that the SLD's decision to sell to plaintiff's predecessors a landlocked parcel, and subsequent refusal to grant access across it, constitutes entirely discretionary conduct that should absolve defendant of Fifth Amendment liability.

In *Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), the Court determined that the Federal Government could not be held liable under the Fifth Amendment where the local sovereign effectuated and benefitted primarily from the taking of plaintiff's property. The respondent received appropriations from the Federal Government for the purpose of constructing the Greater Pittsburgh Airport. Federal statute required that a plan of the airport, submitted by respondent, be authorized by the federal Civil Aeronautics Administration. As approved, the plan permitted an approach area in close proximity to petitioner's property, resulting in significant damage to the

property and rendering it undesirable and unbearable for residential use.

Respondent argued, *inter alia,* that the Federal Government, as opposed to the local sovereign, took petitioner's property. The Court rejected this argument on the ground that the local sovereign was the "promoter, owner, and lessor of the airport, [and] was in these circumstances the one who took the air easement in the Constitutional sense," *id.* at 89, 82 S.Ct. at 534 (footnote omitted), noting that it was respondent's decision where the airport would be built, what runways it would need, their direction and length, and what land and navigation easements would be needed; "[t]he Federal Government takes nothing." *Id.* Defendant now relies on *Griggs* for the proposition that "[w]here the alleged taking would not have occurred absent conduct by state officers that, within relevant federal law's mandates, was entirely discretionary, this Court and other courts have declined to impose liability on the United States." Def's Br. filed Oct. 31, 1997, at 22–23.

The Court in *Griggs* sought to balance each sovereign's relative degree of culpability for the taking of petitioner's property in an effort to determine which should render compensation. In the instant case, defendant underestimates the gravity of its demand for relinquishment. When such a demand is made, the Enabling Act compels Arizona to comply. The SLD's denial of plaintiff's application for a permanent easement across the ROW corridor arose in part from defendant's demand. The record suggests that had the Federal Government not intervened, the SLD eventually would have issued plaintiff its right-of-way. *See* Affidavit of Gil Cyphert, May 26, 1994, ¶¶ 6–10. Defendant also fails to consider that, as holder of fee title to the land subject to plaintiff's interest, it is not the State of Arizona, but the Federal Government, that benefits from the alleged taking of plaintiff's property interest through right of possession, use, and enjoyment of the property and right of disposal or alienation.[9] These considerations show that the

---

9. Defendant asserts that Arizona now benefits from the release of property encumbered by

plaintiff's interest in exchange for property not so encumbered. Had the relinquishment been

Federal Government is far more involved in the alleged taking of plaintiff's property interest than it was in under the facts found in *Griggs*. The State of Arizona, unlike the local sovereign in *Griggs*, took nothing.

## CONCLUSION

1. Accordingly, based on the foregoing, defendant's motion for summary judgment is denied.

2. The parties shall file a Joint Status Report by April 30, 1998, proposing a schedule for pretrial activities and trial, not to exceed 5 days.

implemented correctly, the resulting exchange of property would have conferred no benefit upon either sovereign. If the failure to warn defendant of plaintiff's property interest resulted in a land exchange to the detriment of the Federal Government, defendant remains free to pursue a remedy against the SLD or the State of Arizona.